STATE OF NORTH CAROLINA Ex REL. J. ABNER BARKER, SOLICITOR OF THE SIXTH JUDICIAL DISTRICT, v. MAY PALMER, ALIAS MAY SMITH; JOHN IVEY BROWN AND R. M. BROWN.

(Filed 1 May, 1940.)

**1. Appeal and Error §§ 21, 40e—**

The refusal of a motion to nonsuit will not be held for error when the evidence is not in the record, since in such case it will be presumed that the evidence was sufficient to be submitted to the jury.

**2. Nuisance § 10—Judgment against lessors may be rendered in action to abate public nuisance only if they had actual or constructive knowledge.**

In an action to abate a nuisance against public morals under the provisions of Michie's Code, 3180, et seq., lessors of the property are entitled to the submission of an issue as to whether they knew the lessee was operating a public nuisance thereon before personal judgment is rendered against lessors taxing them with the cost and padlocking the premises, such personal judgment against them being justified only if they knew or, by the exercise of due diligence, should have known of the maintenance of the nuisance.

**3. Same: Contracts § 8—**

A lease contract will be held to have been made in contemplation of the statute in effect at the time of the execution of the lease providing for the abatement of nuisances against public morals, and the lessor is subject to the rights of the State to padlock the premises in accordance with the statute if they are used in operating a nuisance as defined by the act. Michie's Code, 3180, et seq.

**4. Constitutional Law § 10—**

The State, in the exercise of its police power, may abate a nuisance against public morals.

APPEAL by defendants, John Ivey Brown and R. M. Brown, from *Olive, Special Judge,* at November Term, 1939, of LENOIR. New trial.

This is an action instituted by the State of North Carolina, on relation of J. Abner Barker, Solicitor of the Sixth Judicial District, as plaintiff, against the defendants, for the purpose of abating a nuisance as defined by chapter 60 of the Consolidated Statutes, entitled "Nuisances Against the Public Morals." N. C. Code, 1939 (Michie), sec. 3180, et seq.

In substance, the complaint charged that R. M. Brown, a resident of

BARKER, SOLICITOR, v. PALMER.

Newport News, Virginia, and his father, John Ivey Brown, a resident of North Carolina, were the owners of the premises involved in the action, and that the defendant May Palmer was the lessee of the premises and the owner and operator of the business carried on upon the premises under the name and known as "The Jitterbug Club," and that this business as conducted constitutes a public nuisance. The complaint alleged the premises were used for the purposes of adultery, assignation, prostitution, lewdness and immorality generally, and further charged the illegal sale of whiskey and other intoxicants, resulting in drunkenness, boisterous and disorderly conduct on the premises, further resulting in public nuisance. Defendant May Palmer filed her separate answer, amounting to a general denial. The defendants John Ivey Brown and R. M. Brown filed their separate answer averring that the filling station premises in question were the property of R. M. Brown, and that he had committed the same to the charge and management of his father, the defendant John Ivey Brown; that so far as they knew, no nuisance had been maintained upon the premises; that they had observed no improper conduct thereon, and no complaint in respect thereto had been made to them, and that if any improper conduct had occurred upon the premises, they were not privy thereto; and demanded in case the issue be found against May Palmer, she be required to vacate the premises and that same be surrendered to them for their free and unrestricted use in any lawful manner. The defendant John Ivey Brown, representing himself and his son, R. M. Brown, and their counsel were present in court when the case was called for trial and participated in the selection of the jury, and their counsel read their answer.

At the trial the following issue was submitted to the jury: "Has the defendant May Palmer operated the place known as 'The Jitterbug Club' in such a manner as to constitute a nuisance pursuant to chapter 60 of the Consolidated Statutes of North Carolina?" The jury for its verdict answered the issue "Yes." No appeal has been perfected by the defendant May Palmer. The evidence adduced at the trial is sufficient to support the verdict and finding of the jury. No evidence was offered by any of the defendants.

Certain allegations in the complaint were introduced at the trial with respect to the ownership of the premises known as "The Jitterbug Club" by the defendants Brown, and the leasing thereof by the said defendants Brown to the defendant May Palmer. That May Palmer is now and for a number of months prior to the institution of this action has been the owner and proprietress of said business, and conducts the same personally and with the aid of servants. That said place of business is known as "The Jitterbug Club," and is owned and operated by the defendant, May Palmer, in a thickly populated rural community on said

much-traveled, paved State Highway; that there is a great deal of all kinds of traffic almost continuously passing said place of business; that a large number of citizens of Lenoir County of necessity pass said place of business in going to and from Kinston and their homes and in the pursuit of their own business. That the neighborhood and vicinity in which the said "The Jitterbug Club" is located being thickly populated, and the highway passing it being much traveled, the activities of the defendant May Palmer, her agents and servants and customers, incidental to the operation of said business by said defendant May Palmer, are easily seen and almost necessarily observed by citizens traversing said State Highway, and other residents and citizens in said neighborhood and vicinity.

The further allegation is made that the place is operated as a public nuisance. "That May Palmer, her agents and servants have been and are now engaged in the business of selling liquor unlawfully, and in large quantities; that the building upon said premises is so arranged as to have several rooms therein, which are used, as plaintiff's relator is advised and believes and upon such information and belief alleges, by persons of low repute for the purposes of adultery, assignation, prostitution, lewdness and immorality generally; that the activities incidental to the business of the defendant May Palmer in the illegal sale of whiskey and other intoxicants, results in drunkenness, boisterous and disorderly conduct upon said premises, and results further in the flagrant violation of the public morals to such extent that such business activities constitute a menace to the public morals of the county and have disturbed, shocked and affronted the sensibilities of decent citizens of Lenoir County and the State of North Carolina, who either live near said place of business or have occasion to pass the same on said public highway on which it is located. That said business activities constitute a public nuisance of a base sort. Plaintiff's relator further alleges that unless said public nuisance is abated, the users of said highway and the public generally, will continue to be injuriously affected by such intolerable conditions existing in, around, and adjacent to the said establishment of the defendant May Palmer."

The defendants Brown, answering the above allegations, say: "That while the defendant May Palmer was at the time of the institution of this action and for months prior thereto, the owner and operator of the business conducted upon said premises, and gave her own personal attention to the conduct of said business, these defendants have no knowledge or information concerning other persons aiding and assisting in the conduct of said business except that a niece of the said May Palmer has been observed waiting upon customers in and upon the said premises. That these defendants have observed the sign giving the name under

which said business has been conducted, to wit, 'The Jitterbug Club,' but had nothing to do therewith. . . . So far as they have been able to observe the business of the defendant May Palmer has been conducted in a decent and orderly manner; and in this connection the defendant John Ivey Brown says that he passes by the said premises almost every day and sometimes several times in one day and that he has never observed any unlawful or improper conduct upon the said premises, nor has any complaint ever been made to him by any other person concerning the manner in which the said business is conducted."

The following issue was submitted to the jury: "Has the defendant May Palmer operated the place known as 'The Jitterbug Club' in such a manner as to constitute a nuisance pursuant to chapter 60 of the Consolidated Statutes of North Carolina?" The jury answered the issue "Yes."

The judgment of the court below is, in part, as follows:

"It is now, therefore, upon motion of Thomas J. White, attorney for the plaintiff's relator, considered, ordered, adjudged and decreed that the buildings, erections and premises where the business of the defendant May Palmer, known as 'The Jitterbug Club,' has been carried on, and the tract of land belonging to the defendants John Ivey Brown and R. M. Brown, upon which said buildings are located, together with said business, furniture, fixtures, money, merchandise, stock of goods and other personal property of the defendant May Palmer, which have been used in the operation of said business, which may be found or which may heretofore have been found in and about the said property of the defendants, known as 'The Jitterbug Club,' be and they are hereby declared to constitute a general public nuisance pursuant to chapter 60 of the Consolidated Statutes of North Carolina.

"It is further ordered, adjudged and decreed that the said buildings, erections and premises and the tract of land upon which said buildings are located, be and they are hereby ordered closed against their use by the defendants herein, or either of them or any other person or persons, and the said buildings on the premises known as 'The Jitterbug Club' shall be kept closed for a period of one year from the date hereof, unless sooner released, and the defendants and each of them are hereby restrained and enjoined from leasing said buildings, erections or premises to any other person or persons, firm or corporation, and are hereby forbidden to make or allow to be made any use whatever of the same for a period of one year from the date of this judgment, unless otherwise ordered by the court.

"It is further ordered, adjudged and decreed that the defendant May Palmer be and she is hereby enjoined and restrained from henceforth

maintaining and operating said place of business known as 'The Jitter-bug Club' to the end that said public nuisance arising therefrom may be abated.

"It is further ordered, adjudged and decreed that all fixtures, furniture, musical instruments, or other movable property which have been used by the defendant May Palmer in conducting the said nuisance shall be removed by the sheriff of Lenoir County from the said building in which said business of the defendant May Palmer has been carried on, and that the sheriff of Lenoir County shall sell the said personal and movable property in the manner provided by law for the sale of chattels under execution.

"It is further ordered, adjudged and decreed that the proceeds of the sale of the personal property of the defendant May Palmer as is herein-before provided shall be applied in the payment of the costs of this action and the abatement of said nuisance, and that out of the proceeds of said sale of personal property, the costs and expenses of this proceeding shall be taxed by the clerk. . . . And that such amount as may be left of the proceeds of said sale of personal property after the payment of the above-mentioned costs and expenses shall be paid to the defendant May Palmer. It is further ordered and decreed that the costs of this action be taxed against the defendants. It is further ordered that this judgment shall operate to restrain the said defendant May Palmer from operating any place of business in such a manner as to constitute a public nuisance anywhere in the county of Lenoir, North Carolina. This 10th day of November, 1939. Hubert E. Olive, Judge Presiding."

May Palmer introduced no evidence at the trial and did not appeal from the judgment rendered.

The cost taxed by the clerk is in excess of $250.00 and defendants Brown will have to pay most of it, as May Palmer is insolvent and the personal property seized is not sufficient to pay same. Defendants Brown made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Thos. J. White for plaintiff.*
*Sutton & Greene for defendants John Ivey Brown and R. M. Brown.*

CLARKSON, J. The defendants John Ivey Brown and R. M. Brown at the close of plaintiff's evidence made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The motion was refused and in this we can see no error. The evidence is not in the record of the appeal to this Court, and the presumption is that it is sufficient to sup-

port a verdict. In fact, the name "Jitterbug Club" was perhaps an invitation to the lessors Brown to make inquiry.

As a second issue to be submitted to the jury, the defendants R. M. Brown and John Ivey Brown tendered the following: "If so, has such nuisance been maintained with the knowledge and acquiescence of the defendants R. M. Brown and John Ivey Brown?" The court declined to submit the issue tendered by the defendants Brown, and defendants Brown excepted and assigned errors. Before rendering a personal judgment against the defendants Brown, we think the issue should have been submitted to the jury, and in order to support the judgment or order of padlocking the premises, it must first appear that the lessor had knowledge of the nuisance there maintained or, by the exercise of due diligence, might have known the same. Therefore, the issue as to such knowledge tendered by the defendant in this case ought to have been submitted to the jury.

N. C. Code, 1939 (Michie), sec. 3180, is as follows: "Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, prostitution, gambling, or illegal sale of whiskey is guilty of nuisance, and the building, erection or place, or the ground itself, in or upon which such lewdness, assignation, prostitution, gambling, or illegal sale of liquor is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments and contents, are also declared a nuisance, and shall be enjoined and abated as hereinafter provided."

Section 3184, in part, is as follows: "If the existence of the nuisance be established in an action as provided in this chapter, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the cause, which order shall direct the removal from the building or place of all fixtures, furniture, musical instruments, or movable property used in conducting the nuisance, and shall direct the sale thereof in the manner provided for the sale of chattels under execution, and the effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released," etc.

Section 3185: "The proceeds of the sale of the personal property as provided in the preceding section shall be applied in the payment of the costs of action and abatement, and the balance, if any, shall be paid to the defendant."

Section 3186 provides how order of abatement may be canceled.

When the defendants Brown leased the premises to the defendant May Palmer, under the above existing statutes, ch. 60 of Consolidated Statutes, entitled "Nuisance Against the Public Morals," *et seq.,* entered into and became a part of the contract. Pertinent public statutes affecting contracts must be read into the contracts to which they apply, or, at least,

such contracts must be understood to have been made in contemplation of the law. *Spain v. Hines,* 214 N. C., 432 (437).

In *The People ex rel. Lemon v. Elmore,* 256 N. Y., 489, it is held: "A statute authorizing courts of equity upon sufficient proof to issue an injunction against the maintenance of a house of prostitution and to direct the closing of the building in which the nuisance was maintained, for a year, or until the owner shall give bond against the reëstablishment of the nuisance, does not violate the constitutional right of trial by jury." This case is carefully annotated in 75 A. L. R., 1292 (1298), and it is there said: "Decisions subsequent to the previous annotations on this subject have uniformly sustained the constitutionality of statutes conferring upon courts of equity power to abate a public nuisance, although the acts complained of also constitute a crime and no property rights are invaded." *Carpenter, Solicitor, v. Boyles,* 213 N. C., 432 (446). In the *Carpenter case, supra,* which is similar to the present action, the whole matter was thoroughly discussed, and the facts were held sufficient to abate the nuisance and the act held constitutional.

In *Calcutt v. McGeachy,* 213 N. C., 1 (7), it is written: "In *Skinner v. Thomas,* 171 N. C., 98, the Court said: 'The police power is an attribute of sovereignty, possessed by every sovereign state, and it is a necessary attribute of every civilized government.—6 R. C. L., 183.— "It is the power to protect the public health and the public safety, to preserve good order and the public morals, to protect the lives and property of the citizens, the power to govern men and things by any legislation appropriate to that end." 9 Ency. of U. S. Rep., 473: "Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life and the beneficial use of property." *Slaughterhouse cases,* 16 Wall., 36, 21 L. Ed., 394.' 'The exercise of this power is left largely to the discretion of the lawmaking body, and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizen, and when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished. 6 R. C. L., 236.' *Durham v. Cotton Mills,* 141 N. C., 615; *Shelby v. Power Co.,* 155 N. C., 196; *Reed v. Engineering Co.,* 188 N. C., 39."

New trial.