STATE OF NORTH CAROLINA ON THE RELATION OF J. A. SUMMRELL v. CAROLINA-VIRGINIA RACING ASSOCIATION, INC., AND THE CURRITUCK COUNTY RACING COMMISSION.

(Filed 17 March, 1954.)

**1. Injunctions §§ 4d, 4j—**

Ordinarily a resident and citizen may not enjoin public officials from putting into effect the provisions of a legislative enactment on the ground that the act is unconstitutional unless he alleges and proves that he will suffer direct injury, such as the deprivation of a constitutional right.

**2. Same—**

A resident and citizen may not enjoin a public officer or agency acting under color of legislative authority on the ground of the alleged unconstitutionality of the statute. *Querc:* Does this rule apply where such injunctive relief is sought against a private individual, firm or corporation?

**3. Nuisance § 6b: Injunctions § 4j—**

An establishment used for the purpose of gambling constitutes a nuisance, G.S. 19-1, and may be enjoined in an action brought in the name of the State on relation of a citizen.

**4. Injunctions §§ 4d, 4j: Statutes § 4—**

Where the statute under which defendant maintains and operates a race track for pari-mutuel betting is unconstitutional, a private citizen may maintain an action in the name of the State to enjoin the operation of such track as a public nuisance, G.S. 19-1.

APPEAL by plaintiff's relator from *Morris, Resident Judge,* heard in Chambers at Elizabeth City, on 3 August, 1953, from CURRITUCK.

This is a civil action brought in the name of the State of North Carolina, on relation of J. A. Summrell, a citizen and resident of Currituck County, against the defendant Carolina-Virginia Racing Association, Inc., a private corporation, under the provisions of Ch. 19 of the General Statutes of North Carolina, entitled "Offenses against Public Morals," to perpetually enjoin, as a nuisance as defined by G.S. 19-1, the defendant's maintenance and use of certain premises, buildings, fixtures and machines, for the purpose of gambling.

No temporary writ of injunction was issued, but the defendant was ordered to show cause why such writ should not be issued. The hearing was before Judge Morris, Resident Judge of the First Judicial District. Currituck County Racing Commission was permitted to intervene as a proper party. Currituck County's application for leave to intervene was denied.

Upon the pleadings and affidavits before Judge Morris at the hearing, these facts appear:

Pursuant to an Act of the General Assembly of North Carolina entitled, "An Act Creating the Currituck County Racing Commission for the County of Currituck in the State of North Carolina and providing for an Election Thereon," Ch. 541, 1949 Session Laws, an election was held at which a majority of the qualified voters who participated therein voted in favor of the creation of the Commission.

The three members of the Commission were appointed as provided in the Act. On 11 May, 1949, the Commission met and adopted a resolution granting to the defendant (Section 1) "a franchise, right, and privilege for a term of twenty-five (25) years from this May 11, 1949, to construct, lease, maintain, operate, and own, or to exercise either of said privileges, a race course or driving park or appropriate facilities for pacing, running, and trotting races for horses or dogs, or for both horses and dogs, anywhere within the County of Currituck except within the corporate limits of any town located within said County, and to operate and maintain in connection with the said racing operations what are generally known as 'Pari-Mutuel machines or appliances' or 'Pari-Mutuel systems' of the kind employed and in use at recognized racing courses in America; provided, however, that said 'Pari-Mutuel machines or appliances' or 'Pari-Mutuel systems' shall be maintained and operated only within the enclosure of said park or driving grounds or race courses, and only on days or parts of days when races or racing is being therein conducted."

The franchise so granted is irrevocable so long as the defendant complies with the terms thereof and the reasonable rules and regulations of the Commission. It is granted upon terms such that (Section 2) the defendant is required to pay the Commission "for each day or part of day during which races or racing is conducted, a sum equivalent to ten (10) per cent of the gross receipts derived from all sources or operations connected with or incident to the operation of such races or racing conducted during such day or part of day." It is further provided that without limiting the generality of the foregoing, the term "sum equivalent to ten (10) per cent of the gross receipts derived from all sources or operations referred to above" shall include, in addition to other sources of gross receipts, "(a) ten (10) per cent of the first monies received by the holder of this franchise, derived from the operations of the 'Pari-Mutuel machines or appliances' or 'Pari-Mutuel systems' operated after the direct return to the bettors shall have been made." Should the defendant fail to operate the track, etc., during any calendar year subsequent to 31 December, 1949, it must pay a penalty of $10,000.00 by reason of such "non operation."

The franchise (Section 8) contains this provision: "It is the intention and purpose by this franchise that the Carolina-Virginia Racing Associa-

tion, Inc., shall have and hold all advantages, benefits, privileges, and rights authorized and available under and by virtue of the Act of the General Assembly hereinabove mentioned and by authority of which this franchise is granted."

The defendant, at a cost of approximately $500,000.00, purchased land and constructed thereon a race course intended for, and suitable for, the racing of dogs, "and installed for operation, and has since operated, beginning with the year 1949, what is generally known as a 'pari-mutuel system,' with the apparati used in connection therewith, which is of the kind employed and in use at recognized racing courses in America; and that beginning with, and since, the year 1949, at stated intervals, each year, the defendant has operated and carried on upon said premises seasonably dog-racing meets, at which it has maintained and operated, and persons who chose to do so patronized, the pari-mutuel system."

The defendant's operations have been highly profitable. During each of the years 1949-1952, both inclusive, out of revenues received from the operation of the dog-racing track and the "pari-mutuel" system of betting on the races, the defendant has paid to the Currituck County Racing Commission an average of more than $100,000.00 per year, the net amount of which has been paid to Currituck County, making possible an expansion of the county services, *e.g.,* the enlargement and remodeling of the courthouse, the building of a health center, the construction of new school buildings and the remodeling of old school buildings and the supplement of the salaries of teachers, while at the same time making possible a substantial reduction in the tax rate. In addition, a large number of Currituck County residents as well as others have obtained employment by reason of the defendant's operation.

While "impressed with the seeming merits of plaintiff's contentions as to the invalidity of the Act," Judge Morris held "as a matter of law, that the constitutionality of this Act cannot be raised in or by the present action, and, must be approached by a different procedural method than the one adopted here" . . . and "the Court considers itself in this action to be without legal authority to pass upon the question of the unconstitutionality of the 1949 Act, Ch. 541, Session Laws. *Amick v. Lancaster,* 228 N.C. 157; *Newman v. Watkins, et al.,* 208 N.C. 675; *Wood v. Braswell,* 192 N.C. 588; *Person v. Doughton,* 186 N.C. 723; and other cases of like import in North Carolina."

Accordingly, on the procedural grounds stated and without passing upon the constitutionality of the 1949 Act, judgment was entered denying the plaintiff's application for injunctive relief, dismissing the action and taxing the plaintiff with the costs. The plaintiff duly excepted and appealed.

*Frank B. Aycock, Jr., for plaintiff, appellant.*

*Wilton F. Walker, Jr., John G. Dawson, Lucas, Rand & Rose, and John B. McMullan for defendants, appellees.*

BOBBITT, J.   Where a resident and citizen seeks to enjoin public officials from putting into effect the provisions of a statute enacted by the General Assembly on the ground that the statute is unconstitutional and therefore void, it is held that he is not entitled to injunctive relief in the absence of allegation and proof that he will suffer direct injury, such as a deprivation of a constitutionally guaranteed personal right or an invasion of his property rights.   In the absence of such allegation and proof the Court will not pass on the constitutionality of the statute.   *Wood v. Braswell,* 192 N.C. 588, 135 S.E. 529; *Newman v. Comrs. of Vance,* 208 N.C. 675, 182 S.E. 453.

G.S. 19-1 declares that an establishment used for the purpose of gambling constitutes a nuisance.   Its constitutionality as a valid exercise of police power has been tested and upheld.   *Carpenter v. Boyles,* 213 N.C. 432, 196 S.E. 850; *Barker v. Palmer,* 217 N.C. 519, 8 S.E. 2d 610.   And it is specifically provided by G.S. 19-2 that "any citizen of the county may maintain civil action in the name of the State of North Carolina upon the relation of such . . . citizen, to perpetually enjoin said nuisance, the person or persons conducting or maintaining the same, and the owner or agent of the building or ground upon which said nuisance exists."   *S. v. Alverson,* 225 N.C. 29, 33 S.E. 2d 135; *Dare County v. Mater,* 235 N.C. 179, 69 S.E. 2d 244.

Thus, the plaintiff's action is not grounded on general equitable principles but on the express authority of G.S. 19-1, *et seq.,* and he is entitled to injunctive relief if he can prove his allegations that the defendant is conducting and maintaining a gambling establishment.   The undisputed facts constitute such proof unless, as alleged by the defendant and intervener, these general statutes are inapplicable to the defendant's operations in Currituck County because the defendant's operations are lawful under Ch. 541, 1949 Session Laws, and the franchise granted to defendant by the Commission in pursuance thereof.   In short, the defendant's operations are lawful if the 1949 Act is a constitutional exercise of legislative power; otherwise, the defendant's operations are unlawful and subject to abatement as a nuisance under G.S. 19-1, *et seq.*   The ultimate status of the defendant's operations will be determined when the constitutional question is decided.   Is this action appropriate for the decision of the constitutional question?   Judge Morris ruled that it was not and dismissed the action on that ground, relying upon *Amick v. Lancaster,* 228 N.C. 157, 44 S.E. 2d 733.

In *Amick v. Lancaster, supra,* the action was brought under G.S. 19-1, *et seq.* The plaintiff sought to enjoin as a nuisance the operation of a liquor store by "The Town of Louisburg Board of Alcoholic Control" pursuant to Ch. 862, 1947 Session Laws. The Court held that since the alcoholic control board was acting "under color of legislative authority" the remedy by action under G.S. 19-1, *et seq.,* "seems inappropriate." It is to be noted that the plaintiff in *Amick v. Lancaster, supra,* sought to enjoin the operations of a governmental board acting "under color of legislative authority." Whether the rationale of the decision would apply equally to a private person, firm, association or corporation is open to serious question. Be that as it may, the 1949 Currituck Act (Ch. 541, 1949 Session Laws) being unconstitutional and therefore void as declared in *S. v. Felton, ante,* 575, there is error in the judgment below dismissing the action; and the cause is remanded for further proceedings.

Error and remanded.