JOHN I. ELMORE v. EDWIN S. LANIER, COMMISSIONER OF INSURANCE.

(Filed 20 June, 1967.)

**1. Administrative Law § 1—**

Initial determination of civil controversies by administrative boards, with right of appeal to the courts, is an expeditious method for the adjudication of such questions, and such procedure is particularly efficient when the subject of inquiry is of a very technical nature, and administrative procedure has become necessary in many fields in the proper administration of justice.

**2. Administrative Law § 3.1;   Injunctions § 11—**

Injunction will not lie for the purpose of interfering with valid and regular statutory procedure before an administrative board, there being ample opportunity for a party to redress any injustice by appeal from the final order of such board.

**3. Administrative Law § 3.1;   Insurance § 2—**

In a hearing before the Insurance Commissioner of charges against an agent in proceedings for the revocation of the agent's license, the agent having been given more than the 10 day statutory notice, motion for a continuance and motion for a bill of particulars are addressed to the sound discretion of the Commissioner, and the denial of the motions will not be disturbed in the absence of a showing of abuse. G.S. 58-42.

**4. Insurance § 2;   Actions § 3—**

Proceedings against an insurance agent for revocation of licenses do not become moot upon the surrender by the agent of his licenses or their expiration, since adjudication of the question of the agent's wrongdoing would affect subsequent issuance of license to him.

APPEALS by plaintiff and defendant from *Braswell, J.,* February 20, 1967, Second February Regular Civil Term of WAKE Superior Court.

As a result of some six months' investigation of the plaintiff's activities as an insurance agent, the Commissioner of Insurance, acting under the authority of Chapter 58 of the General Statutes, suspended the insurance licenses of the plaintiff, charged him with some twenty-two violations, and set a time for hearing on the charges. The notice was dated 25 January 1967, served on 26 January 1967, and fixed the date of the hearing for 6 February 1967, which, by second notice, was changed to 13 February 1967.

The Commissioner charged that in each of the cases the plaintiff had made false representations to insurance companies he represented, that the insured owned 100 per cent interest in certain tobacco lands in Lenoir County, when he knew that such claims were false. He also charged that the plaintiff had received money for the losses so claimed, and that he had failed to properly apply the proceeds, and that the total amount for which the plaintiff was indebted to the insurance agencies was some $33,000. Separate charges were made in each of the twenty-two cases in which it was alleged that Elmore had made false representations with reference to an application for insurance against direct loss by hail and additional perils on tobacco crops and had wrongfully signed, or caused to be signed, the name of the applicants, whereby he obtained drafts

from the insurance companies. That he negotiated the drafts but did not deliver the proceeds to the named insured. In each application the date of the alleged loss, the location of the acreage involved, and the name of the purported land owner was set forth.

Before the date of the hearing, on 5 February 1967, the plaintiff filed four motions: (1) motion to sever; (2) motion for bill of particulars; (3) motion for continuance; (4) motion that stenographic record be kept.

On 8 February the Commissioner wired plaintiff's attorney that the motions would be heard on 13 February and suggested that he prepare to proceed with the hearing "as scheduled in the event of the denial of motions."

On 13 February the plaintiff filed his own affidavit and the affidavit of his attorney, Thomas J. White, which in substance stated that the plaintiff had been unable to prepare for the hearing within the limited time allowed; that his attorney had many other obligations and engagements and was unable to work on the matter except at odd times; that his attorney was a member of the North Carolina Senate and Chairman of the Appropriations Committee of the Senate, and that his duties in that capacity, as well as a large legal practice, would prevent him from giving proper attention to the matter until the adjournment of the General Assembly in June 1967. The Commissioner denied all of the plaintiff's motions except the one requesting that a stenographic record be kept.

The hearing was thereupon begun on Monday, 13 February, and while it was in progress, an order signed by his Honor J. William Copeland, Judge of the Superior Court, was served upon the Commissioner. It restrained the Commissioner from proceeding further with the hearing "and from doing any act or thing in furtherance thereof in prosecution of the charges" and made the order returnable on 2 March 1967.

Two days later the Commissioner moved in Wake Superior Court that a hearing on Judge Copeland's order be had before the return date fixed therein, and as a result a hearing was set before Judge E. Maurice Braswell on 20 February 1967. At that hearing the plaintiff and his attorney were present, and affidavits setting forth in detail his claims and position were filed. The Commissioner filed counteraffidavits, and after a full hearing and arguments before Judge Braswell, the preliminary order was ordered dissolved; however, the Court ordered that pending the appeal that no further hearing or proceedings be had in the matter.

From the order dissolving the preliminary injunction the plaintiff appealed. The defendant also appealed from the order staying the dissolution of the injunction pending the appeal.

*Thos. J. White, Attorney for the plaintiff.*

*Howard E. Manning, Special Counsel to the Department of Insurance; T. Wade Bruton, Attorney General, by Bernard A. Harrell, Assistant Attorney General, for defendant.*

PLESS, J. The pertinent sections of Chapter 58 of the General Statutes — Insurance — are summarized as follows:

G.S. 58-42 provides that when the Commissioner of Insurance is satisfied that any insurance agent has willfully violated any of the insurance laws of the State or willfully misrepresented any policy of insurance, or willfully deceived any person in regard to any insurance policy, or has failed to pay over any money or property in his hands belonging to an insurance company, the Commissioner may immediately suspend his license, giving the licensee ten days' notice of the charges and of a hearing thereon; and if, upon the hearing, the Commissioner finds any of the above violations, he shall specifically set out such finding and revoke the license of the agent. The agent may have the revocation reviewed as provided in G.S. 58-9.3 by filing a petition in the Superior Court of Wake County within thirty (30) days from the date a copy of the order is delivered to the petitioner. The cause will be heard by the trial judge as a civil case, upon transcript of the record, for review of findings of fact and errors of law only, and the order may be affirmed or set aside as the record may justify. The order of the superior court is subject to appeal to the Supreme Court, by any party to the action, as in other civil cases.

Legislation of this type has become necessary in many fields, and so a system of administrative procedure has been instituted in which matters of regulation and control may, and must be, tried by properly established commissions and agencies that are peculiarly qualified for the purpose. Thus, we have the Workmen's Compensation Commission, the Utilities Commission, and the Insurance Commission which are similarly empowered to hear and determine controversies in their respective fields. Since practically every case originating in the courts must, as a matter of absolute right, be tried by a jury — unless all parties waive it — it has been found more efficient and practical to use the administrative process in these instances. This procedure is particularly efficient when the subject of inquiry is of a very technical nature, or involves the analysis of

many records. After the hearings before the agencies have been conducted, the statute gives any aggrieved party his "day in court" by appeal or other recognized procedure.

To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies. To allow it would mean that in some instances a case might pend in the courts until a jury trial could be held, which would frequently cause unjustified delay, and result in thwarting the purpose for which the administrative investigation was established, and the constitutionality of the proceedings may not be tested except in rare instances — not applicable here — until the matter has reached the courts for review.

In *Summrell v. Racing Association*, 239 N.C. 591, 80 S.E. 2d 638, Bobbitt, J., speaking for the Court, said:

> "Where a resident and citizen seeks to enjoin public officials from putting into effect the provisions of a statute enacted by the General Assembly on the ground that the statute is unconstitutional and is therefore void, it is held that he is not entitled to injunctive relief in the absence of allegations and proof that he will suffer direct injury, such as a deprivation of a constitutionally guaranteed personal right or an invasion of his property rights. In the absence of such allegation and proof the Court will not pass on the constitutionality of the statute. *Wood v. Braswell*, 192 N.C. 588, 135 S.E. 529; *Newman v. Comrs. of Vance*, 208 N.C. 675, 182 S.E. 453."

In *Fox v. Commissioners of Durham*, 244 N.C. 497, 94 S.E. 2d 482, Justice Bobbitt, again speaking for the Court, said:

> "In 28 Am. Jur., Injunctions sec. 182, the general rule is stated as follows: 'The usual ground for asking injunctive relief against the enforcement of statutes is their invalidity, but that, of itself, is not sufficient to warrant the exercise by equity of its extraordinary injunctive power. In other words, the mere fact that a statute is alleged to be unconstitutional or invalid will not entitle a party to have its enforcement enjoined.'"

In this case, after some six months of investigation, the Commissioner of Insurance has charged that the petitioner has fraudulently and flagrantly filed false claims for insurance losses by virtue of his license as an insurance agent. Whether the charges will be proven is yet to be established, but we can assume that the elected Commissioner of Insurance would not temporarily suspend the plaintiff's

licenses and prefer these serious charges without substantial evidence to support them. The action of the plaintiff in closing out his business and moving to another county in the midst of the Commissioner's investigation indicates that he, too, had some fears of the outcome.

The petitioner offered impressive reasons for a continuance of the hearing, but the motion was denied. While the statute provides for ten days' notice, he was given seventeen. Moreover, the investigation by the Commissioner could not have been conducted without the knowledge of the petitioner, and his concern for the outcome is demonstrated by the closing of his business three months before the hearing and indicates that he was forewarned of the likelihood of this proceeding well in advance, and had substantially more notice than the statute requires. In the absence of abuse of discretion, which is not shown, the refusal of the Commissioner to allow a continuance cannot be overruled. The motions to sever and for a bill of particulars were also determined in the discretion of the Commissioner, and, no abuse being shown, the rulings thereon will not be disturbed.

At the hearing, the petitioner surrendered his insurance licenses, all of which expired on March 31. The petitioner claims that under these circumstances the cause is now moot. He further calls attention to G.S. 58-48 which he says provides for punishment in criminal proceedings if his guilt should be established. An inspection of that statute leaves some question of its applicability to the allegations made by the Commissioner. Even if the petitioner is correct, this would constitute no defense to these proceedings. The Insurance Commissioner has no authority to require the Solicitor to institute or prosecute a criminal action nor to require a judge to punish the defendant upon conviction. Then too, repayment of the alleged misappropriation of $33,000 would not necessarily be required in criminal proceedings.

With no adjudication of his wrongdoing, and upon the dismissal of these charges (solely because the petitioner, with whatever motive, reason or hope, has found it expedient to surrender his licenses), he could have substantial hope of regaining them within a comparatively short time. To move across a nearby state line, he would, in all probability, have little difficulty in obtaining licenses in the other state. While the agent in this kind of investigation may be presumed to be guiltless until his improper conduct has been formally proven, we must recognize that he would not be likely to close up his business, surrender his means of livelihood, and move his home unless

he had substantial fear of the results of the investigation he is try-
ing so desperately to prevent.

The plaintiff must accede to the laws of the State which require
that his alleged derelictions be first adjudicated by the Insurance
Commissioner. This has been prevented because of the *ex parte* pre-
liminary injunction obtained by the plaintiff. Ample safeguards are
provided by appeals to the courts, at the proper time, to protect him
from any improper or illegal results.

Judge Braswell was correct in dissolving the temporary injunc-
tion, and the cause is hereby remanded for further proceedings be-
fore the Commissioner of Insurance under Chapter 58 of the Gen-
eral Statutes.

Affirmed.