JEWELL J. CHURCH v. MADISON COUNTY BOARD OF EDUCATION; ROBERT L. EDWARDS, INDIVIDUALLY AND AS SUPERINTENDENT OF MADISON COUNTY BOARD OF EDUCATION; EMERY WALLIN, DONALD N. ANDERSON, DEDRICK C. CODY, BOBBY PONDER, WILLIAM M. ROBERTS, INDIVIDUALLY AND AS MEMBERS OF THE MADISON COUNTY BOARD OF EDUCATION

No. 7624SC502

(Filed 15 December 1976)

**1. Administrative Law § 2— exhaustion of administrative remedies**
     When the Legislature has provided an effective administrative remedy by statute, that remedy is exclusive and a party must pursue and exhaust such remedy before resorting to the courts.

---

Church v. Board of Education

---

2. **Administrative Law § 2; Schools § 13— dismissal of school principal —
action for damages and injunction — failure to exhaust administrative
remedies**

> A school principal's complaint seeking damages and an injunction
> prohibiting defendant board of education from acting further with re-
> spect to her dismissal as principal was properly dismissed because
> of her failure to exhaust administrative remedies where (1) the plain-
> tiff requested a hearing before the board of education pursuant to
> G.S. 115-142(i)(6) but the hearing had not yet been held, and (2)
> an appeal to the superior court would be available to plaintiff under
> G.S. 115-142(n) after the board holds the hearing and acts on her
> dismissal.

APPEAL by plaintiff from *Lewis, Judge.* Judgment entered
8 March 1976 in Superior Court, MADISON County. Heard in the
Court of Appeals 21 September 1976.

Pursuant to G.S. 115-142, the Tenure Act, the Superintend-
ent of the Madison County Board of Education, Robert L. Ed-
wards, notified the plaintiff on 27 June 1975 of his intent to
recommend her dismissal as a school principal in Madison
County. Essentially, it was comp'ained that the plaintiff had
been "padding" school attendance records. Pursuant to G.S.
115-142(h)(3), the plaintiff then requested and was given a
review before a Professional Review Committee, which recom-
mended that she be reprimanded but not dismissed. At that
time the superintendent, notwithstanding the committee's re-
port, notified the plaintiff and the board that he still wanted
to press for her dismissal and shortly thereafter the board noti-
fied the plaintiff that it was going to act on the superintendent's
recommendation. The plaintiff then, pursuant to G.S. 115-142(i)
(6), requested a hearing before the board on 25 September
1975. Before this hearing could ever take place, plaintiff filed
a complaint with the superior court setting forth the above
proceedings, alleging denial of due process and violation of her
civil rights, and seeking damages and injunctive relief to pre-
vent the school board from taking any further action with
respect to plaintiff's dismissal. Judge Briggs then heard plain-
tiff's motion for a preliminary injunction and, by order of 24
October 1975, enjoined defendants' proceedings. Defendants at
first gave notice of appeal from this injunction but then with-
drew the appeal and moved to dismiss plaintiff's complaint pur-
suant to G.S. 1A-1, Rule 12(b)(6). Defendants' motion to
dismiss was heard by Judge Lewis who granted the motion and
dismissed the complaint and dissolved Judge Briggs' prelimi-

nary injunction by a judgment filed 8 March 1976. Judge Lewis found facts and concluded that plaintiff had failed to exhaust her administrative remedies under the Tenure Act. Plaintiff has now appealed from the 8 March judgment.

*Chambers, Stein, Ferguson & Becton, by James C. Fuller, Jr., for plaintiff.*

*Ronald W. Howell, for defendants.*

MARTIN, Judge.

The plaintiff's complaint was dismissed, pursuant to G.S. 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief could be granted. The sole issue before this Court is whether the trial court erred in dismissing the case under this rule. The defendants contend that dismissal was proper because the trial court did not have jurisdiction to entertain the case until the plaintiff had exhausted all the administrative remedies provided by G.S. 115-142. We agree with this contention.

The General Assembly has enacted an exhaustive statute concerning the employment and dismissal of public school teachers in North Carolina. This statute, G.S. 115-142, creates detailed procedures for settling contracts, dismissals, and demotions and is commonly referred to as the Tenure Act.

The pertinent sections of G.S. 115-142 are summarized as follows:

"(h) Procedure for Dismissal or Demotion of Career Teacher. —

"(1) A career teacher may not be dismissed, demoted, or reduced to part-time employment except upon the superintendent's recommendation.

"(2) Before recommending to a board the dismissal or demotion of the career teacher, the superintendent shall give written notice to the career teacher by certified mail of his intention to make such recommendation. . . .

"(3) Within the 15-day period after receipt of the notice, the career teacher may file with the superintendent a written request for . . . (i) a review of the superintendent's proposed recom-

mendation by a panel of the Professional Review Committee. . . .

"(4) If a request for review is made, the superintendent, within five days of filing such request for review, shall notify the Superintendent of Public Instruction who, within seven days from the time of receipt of such notice, shall designate a panel of five members of the Committee (at least two of whom shall be lay persons) who shall not be employed in or be residents of the county in which the request for review is made, to review the proposed recommendations of the superintendent. . . .

"(i) Investigation by Panel of Professional Review Committee; Report; Action of Superintendent; Review by Board. —"

\* \* \*

"(4) When the panel has completed its investigation, it shall prepare a written report and send it to the superintendent and teacher. The report shall contain an outline of the scope of its investigation and its finding as to whether or not the grounds for the recommendation of the superintendent are true and substantiated. . . .

"(5) Within five days after the superintendent receives the report of the panel, he shall submit his written recommendation for dismissal to the board with a copy to the teacher. . . .

"(6) Within seven days after receiving the superintendent's recommendation and before taking any formal action, the board shall notify the teacher by certified mail that it has received the superintendent's recommendation and the report of the panel. The notice shall state that if the teacher requests a hearing before the board on the superintendent's recommendation, a hearing will be provided at the time and place specified in the notice."

\* \* \*

"(n) Appeal. — Any teacher who has been terminated by action of the board after a hearing pursuant to

Church v. Board of Education

subsections (k) or (l) shall have the right to appeal
from the decision of the board to the superior court
for the judicial district in which the teacher is em-
ployed. The appeal shall be filed within a period of
30 days after notification of the decision of the board.
The cost of preparing the transcript shall be borne
by the board."

[2] Plaintiff's complaint clearly reveals that, until the time
this lawsuit was instituted, she had proceeded under the Tenure
Act. However, at the time the plaintiff's complaint was filed,
there still remained certain administrative remedies provided
by G.S. 115-142 to which the plaintiff had not resorted. For
example, although the plaintiff had requested a hearing pur-
suant to G.S. 115-142 (i) (6), she failed to resort to this hearing
to present her side of the dismissal issue. In fact, she even
prevented this hearing from ever taking place by bringing the
present action for damages and obtaining a preliminary in-
junction. In addition, the plaintiff failed to appeal her dis-
missal as provided in G.S. 115-142 (n). Instead of filing an
appeal with the superior court *after* the board hearing and
*after* dismissal, she brought the instant action in the superior
court *before* either of these events took place.

[1] In North Carolina, our courts have held that when the
Legislature has provided an effective administrative remedy
by statute, then that remedy is exclusive. *Wake County Hospital
v. Industrial Commission,* 8 N.C. App. 259, 174 S.E. 2d 292
(1970). See also 1 Strong, N. C. Index 3d, *Administrative Law,*
§ 2 (1976). In addition, our courts have held that not only is
the administrative remedy exclusive but also a party must
pursue it and exhaust it before resorting to the courts. See
*King v. Baldwin,* 276 N.C. 316, 172 S.E. 2d 12 (1970) ; *Garner
v. Weston,* 263 N.C. 487, 139 S.E. 2d 642 (1965) ; *Sinodis v.
Board of Alcoholic Control,* 258 N.C. 282, 128 S.E. 2d 587
(1962) ; *Employment Security Commission v. Kermon,* 232
N.C. 342, 60 S.E. 2d 580 (1950) ; *Stevenson v. N. C. Depart-
ment of Insurance,* 31 N.C. App. 299, 229 S.E. 2d 209 (1976).
See also 1 Strong, N. C. Index 3d, *supra.*

Our Supreme Court, in the case of *Elmore v. Lanier,* 270
N.C. 674, 155 S.E. 2d 114 (1967), has made the doctrine of the
exhaustion of administrative remedies quite clear. In *Elmore,*
the Commissioner of Insurance suspended the plaintiff's insur-

ance license after a six-month investigation and charged him with some twenty-two violations. As in the instant case, a time was set for an administrative hearing on the charges against the plaintiff to determine what final action should be taken. Before this hearing could be concluded, the insurance agent, like the teacher in this appeal, went to the superior court and obtained an order restraining the Commissioner from proceeding under the legislative enacted administrative hearing and from doing any other act on the charges against the plaintiff. As in G.S. 115-142, the insurance agent, just like the appellant teacher before us, had the right to have any license revocation reviewed by filing a petition in the superior court within 30 days after the time of any final order of revocation. This case was appealed to the North Carolina Supreme Court and in an opinion by Justice Pless, it was held that the cause of action to restrain the Commissioner of Insurance from proceeding in accordance with the administrative procedure was not proper because there had been a failure to exhaust the administrative remedies provided.

This doctrine of exhausting administrative remedies has long been applied by the Supreme Court of this State. The doctrine, for example, has often been employed in taxpayer cases where the statutes provide administrative channels through which a taxpayer may question the appraisal of his property. Such cases have held that

" . . . it is the accepted position that a taxpayer is not allowed to resort to the Courts in cases of this character until he has pursued and exhausted the remedies provided before the duly constituted administrative boards having such matters in charge." (Citations omitted.) *Manufacturing Co. v. Commissioners,* 189 N.C. 99, 103, 126 S.E. 114, 116 (1925). See also 1 Strong, N. C. Index 3d, *supra.*

The doctrine is also not new to this Court and has frequently been used in the past. See *Wake County Hospital v. Industrial Commission, supra.*

Justice Pless, in speaking for the Court in *Elmore v. Lanier, supra,* on the collateral attack of the administrative procedure enacted by the Legislature stated:

"To permit the interruption and cessation of proceedings before a commission by untimely and premature interven-

Church v. Board of Education

tion by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies. To allow it would mean that in some instances a case might pend in the courts until a jury trial could be held, which would frequently cause unjustified delay, and result in thwarting the purpose for which the administrative investigation was established. . . . " *Elmore v. Lanier, supra* at 678, 155 S.E. 2d at 116.

We agree with Justice Pless's concern. Legislation of the type outlined by G.S. 115-142 has become necessary in many fields where matters of regulation and control may, and must, be handled by appropriate commissions and agencies that are particularly qualified for this purpose. Our Legislature has concluded that many areas of concern are more efficiently and more practically disposed of if handled initially by the administrative process rather than the courts. This has been particularly true in matters such as workmen's compensation, utility rates, insurance rates, and the dismissal and demotion of teachers. In order to expedite matters in these areas of concern, the Legislature has created administrative agencies, commissions, and elaborate proceedings for hearings and appeals. To allow the courts to prematurely interrupt or stop these administrative proceedings would completely negate the effectiveness and purpose for which they were statutorily created.

G.S. 115-142 provides the administrative channels through which an individual public school teacher may question and obtain review of his or her dismissal or demotion. By virtue of this statute, the Legislature has provided adequate administrative means whereby a teacher may contest the actions taken against him or her without first having to resort to the courts, and ample safeguards have been provided by appeals to the courts, at the proper time, to protect a teacher from any improper or illegal results.

[2]  In the instant case, the plaintiff had not exhausted her administrative remedies before resorting to the courts. We therefore conclude that the trial court's dismissal pursuant to G.S. 1A-1, Rule 12(b)(6) was proper and the judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge VAUGHN concur.