J. CALVIN CUNNINGHAM, Plaintiff v. ROSEMARY BLEVINS SELMAN, Defendant

No. COA09-199

(Filed 8 December 2009)

**1. Jurisdiction— subject matter—North Carolina State Bar's fee dispute resolution program**

The trial court did not err in dismissing for lack of subject matter jurisdiction plaintiff's civil action to recover unpaid attorney fees from Defendant. The State Bar's fee dispute resolution rules are jurisdictional and mandatory; the basic principle that one must comply with a valid administrative scheme before seeking redress in the courts is applicable. In this case, mediation of the fee dispute was still pending because the State Bar mediator had not declared an impasse and no written settlement agreement had been executed by the parties.

**2. Jurisdiction— subject matter—North Carolina State Bar's fee dispute resolution program—conclusion**

The undisputed evidence in this case shows that plaintiff prematurely and unilaterally ended his participation in the State Bar's fee dispute resolution program and brought suit against defendant, a decision which will not be countenanced.

**3. Jurisdiction— subject matter—North Carolina State Bar's fee dispute resolution program—waiver of rules**

By terminating the fee dispute resolution process and notifying the Grievance Committee of plaintiff's conduct, the State Bar did not "waive" its fee dispute resolution rules, thereby allowing plaintiff's civil action to move forward, as this would render meaningless the State Bar's rules and any resulting jurisdictional limitations on the power of the courts to hear and decide such cases.

**4. Jurisdiction— subject matter—North Carolina State Bar's fee dispute resolution program**

In an action filed to recover attorney fees for plaintiff's representation of defendant in an equitable distribution litigation, plaintiff's reliance on *Baars v. Campbell University* and Comment [7] of Rule 0.2 of the Rules of Professional Conduct was misplaced as defendant did not seek to hold plaintiff liable for an alleged violation of the Rules but, instead, attempted to use plaintiff's noncompliance with the State Bar's rules as a jurisdictional defense to plaintiff's claim.

**CUNNINGHAM v. SELMAN**

[201 N.C. App. 270 (2009)]

## 5. Jurisdiction— subject matter—order to dismiss

The trial court dismissed plaintiff's complaint seeking recovery of attorney fees for his representation of defendant in an equitable distribution litigation because plaintiff's failure to comply with the State Bar's fee dispute resolution rules deprived the trial court of jurisdiction over the subject matter of plaintiff's complaint. The trial court's dismissal of plaintiff's complaint was not a sanction for plaintiff's violation of the State Bar's fee dispute resolution rules and plaintiff will not have been sanctioned twice for the same conduct if the State Bar ultimately imposes sanctions.

Appeal by Plaintiff from order entered 30 October 2008 by Judge Richard W. Stone in Davidson County Superior Court. Heard in the Court of Appeals 2 September 2009.

*Law Offices of J. Calvin Cunningham, by Harvey W. Barbee, Jr., and Cheshire Parker Schneider Bryan & Vitale, by Jonathan McGirt, for Plaintiff.*

*Barry Snyder, for Defendant.*

ERVIN, Judge.

J. Calvin Cunningham (Plaintiff) appeals from order entered 30 October 2008 dismissing his complaint and the counterclaims of Rosemary Selman (Defendant) without prejudice. After careful consideration of the record in light of the applicable law, we affirm the trial court's decision.

Plaintiff is an attorney at law licensed to practice in North Carolina. Defendant retained Plaintiff to represent her in a number of domestic relations matters. As part of that process, Defendant executed three contracts in which she retained Plaintiff's services, one of which provided for Plaintiff's representation of Defendant in connection with claims for divorce from bed and board, child custody, child support, alimony, and attorneys' fees, with attorneys' fees to be billed at hourly rates of $200.00 per hour for Plaintiff and $175 per hour for Nicholas Wilson, an associate employed by Plaintiff; a second of which provided for Defendant's representation of Plaintiff in a claim for equitable distribution of marital property, with Plaintiff to receive a contingent fee consisting of 40% of any recovery obtained in that litigation; and the third of which provided for Plaintiff's representation of Defendant in connection with claims involving a request for a

domestic violence protective order and civil assault, with attorneys' fees apparently to be charged in the same manner and at the same rate as provided for in the first contract. The present dispute relates solely to Plaintiff's claim for fees owed in connection with his representation of Defendant in the equitable distribution matter.

During the period from 3 February 2006 to 4 March 2008, Defendant paid Plaintiff $62,971.91 relating to legal work performed in connection with the first (and, possibly, the third) contract. In addition, Defendant paid $8,481.61 associated with the recovery of $21,204.03 and $55,303.00 associated with the recovery of $132,575.00 in the equitable distribution case. Thus, Defendant paid Plaintiff a total of $126,756.52 for legal work performed on her behalf prior to the point at which the present controversy erupted.

In 2007, Plaintiff negotiated a final settlement on Defendant's behalf in the equitable distribution proceeding, under which Defendant received an additional $443,149.59. Under the contingent fee contract between the parties relating to the equitable distribution matter, Plaintiff contends that Defendant owes an additional $177,259.84 in legal fees, plus $1,337.71 in unreimbursed expenses and interest at the legal rate. As a result of Defendant's refusal to pay this additional amount, a dispute over the amount of unpaid legal fees arose between the parties.

According to Rule 1.5(f) of the Rules of Professional Conduct:

Any lawyer having a dispute with a client regarding a fee for legal services must:

(1) make reasonable efforts to advise his or her client of the existence of the North Carolina State Bar's program of fee dispute resolution at least 30 days prior to initiating legal proceedings to collect the disputed fee; and

(2) participate in good faith in the fee dispute process if the client submits a proper request.

In addition, 27 NCAC 01D.0706(a) states, in pertinent part, that:

The attorney must allow at least 30 days after the client shall have received written notice of the fee dispute resolution program before filing a lawsuit. An attorney may file a lawsuit prior to expiration of the required 30-day notice period or after the petition is filed by the client if such is necessary to preserve a claim. However, the attorney must not take any further steps to pursue

the litigation until he/she complies with the fee dispute resolution rules. Clients may request fee dispute resolution at any time prior to the filing of a lawsuit. No filing fee shall be required. The request should state with clarity and brevity the facts of the fee dispute and the names and addresses of the parties. It should also state that, prior to requesting fee dispute resolution, the matter has not been adjudicated, and the matter is not presently the subject of litigation. All requests for resolution of a disputed fee must be filed before the statute of limitations has run or within three years of the ending of the attorney/client relationship, whichever comes last.

Plaintiff appears to have properly notified Defendant of her right to participate in the fee dispute resolution process, and Defendant appears to have submitted a proper request for resolution of the parties' fee dispute to the State Bar. As a result, the State Bar's fee resolution procedures appear to have been properly commenced and, up to a point, have proceeded in the customary manner. Unfortunately, however, the process "jumped the tracks" in the late spring and early summer of 2008.

On 14 April 2008, Krista Bathurst, the State Bar mediator assigned to the dispute between the parties, sent an e-mail to Plaintiff indicating that Defendant could "pay the reduced ED" "within 15 days" and asking two questions: (1) "how much of the February 13, 2008 bill is being credited back to the client per previous emails[,]" and (2) was this amount "the only balance due your office at this time, the ED?"[1] On 23 May 2008, Plaintiff faxed Ms. Bathurst a letter to which "a photocopy of the invoice mailed to [Defendant] on February 5, 2008, showing a courtesy discounted balance due of $144,000.00[,]" was attached. According to Plaintiff's letter, "[t]he settlement figure of $443,149.59 divided by the $144,000.00 balance equals .3249%." On 27 May 2008, Ms. Bathurst e-mailed the following response to Plaintiff:

> I [have received] your fax with the ED percentage and balance previously offered and agreed to by your firm, to wit, the sum of $144,000. Please let me know if you are still willing to accept this reduced balance and I will let the client know immediately and get back with you. If this is accepted, I trust this resolves the ED balance. You did indicate you would be waiving the interest charged on this balance with your firm.

---

1. Ms. Bathurst's e-mail also contains an unclear reference to an "additional $40.00 billed by the paralegal to the ED matter."

On 30 June 2008, Plaintiff filed a complaint in Davidson County Superior Court seeking to recover $178,597.51 in fees and expenses, plus interest on this principal amount from and after 24 January 2008 accruing at eight percent per annum, or $1,181.73 per month, from Defendant based on his representation of Defendant in the equitable distribution matter. In his complaint, Plaintiff alleged, among other things, that, "[p]ursuant to the State Bar guidelines, Plaintiff and Defendant attempted fee dispute resolution but reached an impasse." Plaintiff's complaint was served upon Defendant by hand delivery on 1 July 2008.

On 2 July 2008, Ms. Bathurst sent Plaintiff a letter, a copy of which she also provided to Defendant, in which she indicated that she had received a call from Defendant to the effect that Plaintiff had "filed suit against her to collect the disputed fee and that she was served with same by the" Sheriff. Ms. Bathurst further stated that:

> As previously stated in my May 2, 2008 email, you are precluded from filing suit against Ms. Selman until this mediation is resolved and I have completed my investigation of the same. This has not occurred. To date, I have been unable to complete my investigation due to your non-compliance and refusal to provide me with the documentation I have repeatedly requested. . . .

> Presently, this mediation is open and being investigated. By filing suit against [Defendant], it would be my understanding that you are in violation of the Rules of Professional Conduct.

On 3 July 2008, Ms. Bathurst sent Defendant a letter, a copy of which she also mailed to Plaintiff, in which she stated that:

> The rules that govern the State Bar's Fee Dispute Resolution Program mandate that an attorney must participate in the fee dispute resolution process once fees have been disputed by the client. Should the attorney fail to participate in the fee dispute resolution process, the policy of the program is to refer the matter to the State Bar's Grievance Department for appropriate action.

> In your case, the attorney has failed to participate in good faith in the fee dispute resolution process. Pursuant to our last telephone conversation, this is to advise you that no further action is being taken on your request for fee dispute resolution. Accordingly, the file has been closed.

We have, however, initiated a grievance file regarding your fee dispute with [Plaintiff]. If you wish to be listed as a party to the grievance process, please contact Dawn Whaley of the Grievance Department. The closing of the fee dispute file does not preclude you and [Plaintiff] from voluntarily settling the dispute or both parties from pursuing whatever legal remedies may be available.

On 29 July 2008, Plaintiff sent Defendant's counsel the following letter, in which he attempted to explain the basis upon which he believed that he was entitled to initiate litigation against Defendant:

This dispute was referred to Fee Dispute Resolution with the North Carolina State Bar. On May 22, 2008, in a telephone conversation with [Ms. Bathurst], she told me that she advised [Defendant] that the forty percent (40%) contingency fee was appropriate for this type of case and for this area. Ms. Bathurst and I then came to an agreement to compromise the contingency fee, the expenses and the interest due by law on contracts ([N.C. Gen. Stat. §] 24-1). After our conversation, a letter misstating the settlement agreement came from the Bar's Ms. Bathurst indicating that "I trust this resolves the ED balance." After this, it was our understanding that there was no further dispute or investigation with this contract for compensation in the equitable distribution case and filed suit.

The purpose of this letter is to inform that I am still open to a compromise.

On 29 August 2008, Defendant filed Answer and Counterclaims in which she denied the material allegations of Plaintiff's complaint; asserted a number of affirmative defenses, including a claim that "Plaintiff's suit for recovery of fees in representing Defendant is barred by Plaintiff's conduct in failing to cooperate with the directives of the North Carolina State Bar and the Rules of Professional Conduct;" and counterclaimed for a more exact statement of the legal services for which she was being billed and a credit or offset to eliminate any charges "for the time involved in making the bill and sending a copy of it to" her. On 2 September 2008, Defendant filed an Amended Answer in which she restated two of her affirmative defenses.

On 16 September 2008, Plaintiff served a notice to take Defendant's deposition, which was scheduled to occur on 2 October 2008. On 29 September 2008, Plaintiff filed a Reply To Counterclaims,

Motion To Dismiss, Motion To Strike and Motion For Sanctions in which Plaintiff requested the Court to dismiss Defendant's counterclaim and impose sanctions upon Defendant for asserting affirmative defenses which Plaintiff contended were interposed for an improper purpose and were not well-grounded in fact. On 30 September 2008, Defendant filed a Motion To Dismiss, Motion To Stay Proceeding, Motion For Protective Order [And] Precluding Further Discovery in which Defendant requested the Court "to dismiss Plaintiff's lawsuit, or in the alternative[,] stay these proceedings," on the grounds that "Plaintiff's suit for recovery of fees in representing Defendant is barred by Plaintiff's conduct in failing to cooperate with the directives of the North Carolina State Bar and the Rules of Professional Conduct." On 14 October 2008, Defendant filed a Motion For Judgment On The Pleadings and Summary Judgment and Response To Plaintiff's Motions, Motion For Leave Of Court To Amend Answer and Counterclaim, to which were attached supporting affidavits by Defendant and John W. Lunsford.

On 30 October 2008, the trial court entered an Order providing that:

This matter came on for hearing pursuant to the defendant's motion to dismiss the complaint on the grounds it was filed in violation of 27 N.C.A.C. 1D. Upon review of the file, evidence and argument of counsel, the court finds as fact as follows:

The plaintiff and the defendant, as attorney and client, are in a dispute over attorney fees charged by the plaintiff.

The dispute was referred to the NC State Bar Attorney/Client Assistance Program for dispute resolution.

Prior to the completion of the dispute resolution procedure provided for by the NC State Bar[,] the plaintiff filed this action. Based on the foregoing Findings of Fact, the court makes the following Conclusions of Law:

27 N.C.A.C. 1D.0700 gives the NC State Bar jurisdiction over disagreements concerning fees and expenses between attorneys and clients.

Pursuant to 27 N.C.A.C. 1D.0706 an attorney may not file a lawsuit once the State Bar has assumed jurisdiction, except as may be necessary to preserve a claim, until such time as the attorney has complied with provisions of the fee dispute resolution rules.

Compliance with the NC State Bar rules necessarily implies allowing the Attorney/Client Assistance Program time to complete its investigation and recommend dismissal, complete a mediation, and announce an impasse or entry of an agreement.

The plaintiff has not complied with provisions of the fee dispute resolution rules in that at the time of filing the lawsuit the matter was still pending before the NC State Bar Attorney/Client Assistance Program.

Based on the foregoing, it is hereby Ordered that the complaint filed in this matter is dismissed without prejudice.

It is further Ordered, based upon representations of counsel for the defendant on the record, that the counterclaims are hereby dismissed without prejudice.

Plaintiff noted an appeal to this Court from the trial court's order on 6 November 2008.

### Legal Analysis

On appeal, Plaintiff essentially advances two issues for our consideration: (1) whether an attorney involved in mediating a fee dispute under the auspices of the State Bar's fee dispute resolution program may concurrently bring a civil action in Superior Court against his former client for the purpose of seeking the recovery of unpaid fees, and (2) whether such an action may go forward, even if filed before the fee dispute resolution process has concluded, in the event that the State Bar closes its file on the fee dispute following the filing of that action. We conclude that the answer to both questions is in the negative and, therefore, affirm the order of the trial court dismissing Plaintiff's complaint without prejudice for lack of subject matter jurisdiction.

[1] Even the most casual perusal of the record demonstrates that Plaintiff and Defendant have a dispute over the appropriateness of the fee that Plaintiff has charged Defendant for his services in the equitable distribution matter in which Defendant was involved. As we have already noted, Rule 1.5(f) of the Rules of Professional Conduct requires attorneys involved in fee disputes with a client to provide notice of the State Bar's fee dispute resolution process to that client and to participate in good faith in that process in the event that the client requests the State Bar's assistance in resolving the dispute. According to the Comments to Rule 1.5(f):

[10] Participation in the fee dispute resolution program of the North Carolina State Bar is *mandatory* when a client requests resolution of a disputed fee. Before filing an action to collect a disputed fee, the client must be advised of the fee dispute resolution program. Notification must occur not only when there is a specific issue in dispute, but also when the client simply fails to pay. . . . (emphasis added)

[11] If a fee dispute resolution is requested by a client, the lawyer *must participate* in the resolution process in good faith. The State Bar program of fee dispute resolution uses mediation to resolve fee disputes as an alternative to litigation. The lawyer must cooperate with the person who is charged with investigating the dispute and with the person(s) appointed to mediate the dispute. . . . (emphasis added)

[12] A lawyer may petition a tribunal for a legal fee if allowed by applicable law or, *subject to the requirements for fee dispute resolution set forth in Rule 1.5(f)*, may bring an action against a client to collect a fee. The tribunal's determination of the merit of the petition or the claim is reached by an application of law to fact and not by the application of this Rule. Therefore, a tribunal's reduction or denial of a petition or claim for a fee is not evidence that the fee request violates this Rule and is not admissible in a disciplinary proceeding brought under this Rule. (emphasis added)

Furthermore, 27 NCAC 01D.0702 provides that:

The [Attorney Client Assistance Committee] *shall have jurisdiction* over all disagreements concerning the fees and expenses charged or incurred for legal services provided by an attorney licensed to practice law in North Carolina arising out of a client-lawyer relationship. Jurisdiction shall also extend to any person, other than the client, who pays the fee of such an attorney. The committee shall not have jurisdiction over the following:

(1) disputes concerning fees or expenses established by a court, federal or state administrative agency, or federal or state official;

(2) disputes involving services that are the subject of a pending grievance complaint alleging the violation of the Revised Rules of Professional Conduct;

(3) fee disputes that are or were the subject of litigation;

(4) fee disputes between lawyers and service providers, such as court reporters and expert witnesses;

(5) fee disputes between lawyers and individuals with whom the lawyer had no client-lawyer relationship, except in those cases where the fee has been paid by a person other than the client; and

(6) disputes concerning fees charged for ancillary services provided by the lawyer not involving the practice of law.

Since none of the exceptions set out in 27 NCAC 01D.0702 applied to the present fee dispute as of the time that Plaintiff filed his complaint[2], the State Bar had jurisdiction over the fee dispute between Plaintiff and Defendant under the fee dispute resolution rules. In addition, as we have already noted, 27 NCAC 01D.0706 required Plaintiff to (1) notify Defendant of the availability of the State Bar's fee dispute resolution program; (2) refrain from initiating litigation against Defendant for thirty days after providing notice of the availability of the fee dispute resolution program in order to allow her to submit a proper request to participate in the program, unless filing suit before the expiration of thirty days was "necessary to preserve a claim"[3]; and (3) to participate in the fee dispute resolution program in *good faith* until its conclusion prior to initiating litigation. The dispute resolution process may end in one of two ways. If the dispute cannot be resolved, pursuant to 27 NCAC 1D.0707(c)(7), the mediator must "determine and declare that an impasse exists" and that the mediation will end. If the dispute is resolved, the parties' agreement must be "reduced to writing and signed by all parties." 27 NCAD 1D.0708. Because Ms. Bathurst had not declared impasse and no written agreement had been executed, the fee dispute resolution process was still pending. In this instance, while Plaintiff did apparently notify Defendant of the existence of the fee dispute resolution pro-

---

2. At one point, Plaintiff appears to contend that he is entitled to the benefit of the exception for claims in litigation set out in 27 NCAC 01D.0702(3). However, Plaintiff's argument is without merit, since the "litigation" exception only applies to fee disputes that had entered litigation before the State Bar's jurisdiction attached to the dispute, such as would occur in cases where the client failed to request the assistance of the fee dispute resolution program within 30 days after receiving the notice required by 27 NCAC 01D.0706.

3. For example, the statute of limitations on the attorneys' fee claim might be about to expire, or the attorney might have information that the client would attempt to evade lawsuit by fleeing the country. In this case, Plaintiff has not claimed that filing suit was necessary to preserve his claim against Defendant, rendering this exception to the general prohibition against the filing of civil actions during the course of the fee dispute resolution process inapplicable.

gram, and while Plaintiff did apparently engage in some negotiations about the amount of his fee through Ms. Bathurst, he did not wait until Ms. Bathurst declared the fee dispute resolution process at an end before filing suit against Defendant. As a result, at the time that Plaintiff filed suit against Defendant, the State Bar was still attempting to resolve Plaintiff's fee dispute with Defendant.

N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) provides, in pertinent part, that:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> . . . .
>
> Lack of jurisdiction over the subject matter[.]

The absence of subject matter jurisdiction affects the court's statutory or constitutional power to adjudicate a claim and is an issue that can be raised at any stage of a proceeding. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3). "[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation [of a Rule 12(b)(1) motion] to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." *Smith v. Privette*, 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998).

> Unlike a Rule 12(b)(6) motion, consideration of matters outside the pleadings does not convert the Rule 12(b)(1) motion to one for summary judgment . . . . An appellate court's review of an order of the trial court denying or allowing a Rule 12(b)(1) motion is *de novo*, except to the extent the trial court resolves issues of fact, and those findings are binding on the appellate court if supported by competent evidence in the record.

*Privette*, 128 N.C. App. at 493, 495 S.E.2d at 397 (quotations omitted). Although the trial court did make findings of fact in the course of deciding the issues raised by Defendant's dismissal motion, Plaintiff has not challenged the sufficiency of the record evidence to support those findings. As a result, the only issue before us on appeal is the correctness of the trial court's conclusion that the trial court did, in fact, lack subject matter jurisdiction over Plaintiff's claim against Defendant, an issue which we review on a *de novo* basis. *Id.*

"Jurisdiction of the court over the subject matter of an action is the most critical aspect of the court's authority to act. Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). "Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute." *Pembaur*, 84 N.C. App. at 667, 353 S.E.2d at 675. The civil jurisdiction of the Superior Court Division of the General Court of Justice is specified in N.C. Gen. Stat. § 7A-240, which provides that:

> Except for the original jurisdiction in respect of claims against the State which is vested in the Supreme Court, original general jurisdiction of all justiciable matters of a civil nature cognizable in the General Court of Justice is vested in the aggregate in the superior court division and the district court division as the trial divisions of the General Court of Justice. Except in respect of proceedings in probate and the administration of decedents' estates, the original civil jurisdiction so vested in the trial divisions is vested concurrently in each division.

N.C. Gen. Stat. § 7A-240. "[E]xcept for areas specifically placing jurisdiction elsewhere (such as claims under the Workers' Compensation Act) the trial courts of North Carolina have subject matter jurisdiction over 'all justiciable matters of a civil nature.' " *Pembaur*, 84 N.C. App. at 668, 353 S.E.2d at 675. As a result, the Superior Court would, ordinarily, have jurisdiction over civil actions brought by attorneys against clients seeking judgments for amounts owed as attorneys' fees.

The State Bar is "an agency of the State of North Carolina," N.C. Gen. Stat. § 84-15, that was created "to enable the bar to render more effective service in improving the administration of justice, particularly in dealing with the problem of admission to the bar, and of disciplining and disbarring attorneys at law." *Baker v. Varser*, 240 N.C. 260, 267, 82 S.E.2d 90, 95-96 (1954). "The government of the North Carolina State Bar is vested in a council of the North Carolina State Bar referred to . . . as the 'Council.' " N.C. Gen. Stat. § 84-17.

> The Council is vested . . . with the authority to regulate the professional conduct of licensed lawyers and State Bar certified paralegals. Among other powers, the Council shall administer this Article; take actions that are necessary to ensure the competence of lawyers and State Bar certified paralegals; *formulate and adopt rules of professional ethics and conduct*; investigate

CUNNINGHAM v. SELMAN

[201 N.C. App. 270 (2009)]

and prosecute matters of professional misconduct; grant or deny petitions for reinstatement; resolve questions pertaining to membership status; *arbitrate disputes concerning legal fees*, certify legal specialists and paralegals and charge fees to applicants and participants necessary to administer these certification programs; determine whether a member is disabled; maintain an annual registry of interstate and international law firms doing business in this State; and formulate and adopt procedures for accomplishing these purposes. The Council may do all things necessary in the furtherance of the purposes of this Article that are not otherwise prohibited by law.

N.C. Gen. Stat. § 84-23(a) (emphasis added). The State Bar, pursuant to its authority to "formulate and adopt rules of professional ethics and conduct" and to "arbitrate disputes concerning legal fees," clearly had the authority to adopt rules requiring members of the legal profession to participate in good faith in a fee dispute resolution program as a precondition for initiating litigation against clients for the purpose of attempting to collect unpaid legal fees; Plaintiff does not appear to contend otherwise. The literal language of 27 NCAC 01D.0702, which provides that "[t]he committee *shall have jurisdiction* over all disagreements concerning the fees and expenses charged or incurred for legal services provided by an attorney licensed to practice law in North Carolina arising out of a client-lawyer relationship," speaks in jurisdictional terms and vests jurisdiction over a fee dispute between an attorney and his or her client with the State Bar's fee dispute resolution program until such time as the efforts made by that program to resolve the dispute come to a natural conclusion. Then, and only then, does a trial court have subject matter jurisdiction to hear a suit filed by an attorney seeking to reduce a claim for attorneys' fees against a client to judgment. For that reason, we conclude that the State Bar's fee dispute resolution rules are jurisdictional in nature and that Plaintiff was obligated to comply with those rules as a prerequisite for bringing a civil suit against Defendant for the purpose of collecting a fee owed for the provision of legal services in the absence of compelling reason for reaching a contrary conclusion.

One might argue that the dual system of attorney discipline that exists in North Carolina constitutes an obstacle to the conclusion that compliance with the State Bar's fee dispute resolution program is a jurisdictional prerequisite to the successful maintenance of an action for attorneys' fees in the General Court of Justice. "North

Carolina is different from many other jurisdictions in that there is a dual mechanism for the regulation and discipline of attorneys practicing in the state courts." *Swenson v. Thibaut*, 39 N.C. App. 77, 109, 250 S.E.2d 279, 299 (1978), *appeal dismissed and disc. review denied*, 296 N.C. 740, 254 S.E.2d 182 (1979). "The North Carolina State Bar, having established a Code of Professional Responsibility to which its members are required to conform as a condition precedent to the continuing practice of law in North Carolina, is empowered by statute [N.C. Gen. Stat. § 84-28] to discipline attorneys and regulate their conduct." *Id.* "Another statute in the same chapter, [N.C. Gen. Stat. § 84-36], however, saves and protects the inherent powers of the court to regulate and discipline attorneys practicing before it." *Id.*

> This power of the court is an inherent one because it is an essential one for the court to possess in order for it to protect itself from fraud and impropriety and to serve the ends of the administration of justice which are, fundamentally, the *raison d'etre* for the existence and operation of the courts. *See*, Inherent Powers of the Court, National College of the State Judiciary (Reno, Nevada: 1973). This inherent power is co-equal and co-extensive with the statutory grant of powers to the North Carolina State Bar, and, while the interests of the two entities having disciplinary jurisdiction may, and often do, overlap, they are not always identical and as the interests sought to be protected by the court's inherent power are distinct from those of the North Carolina State Bar, the action of a court in disciplining or disqualifying an attorney practicing before it is not in derogation or to the exclusion of similar action by the Bar. It is to be noted that steps are being taken to link more closely the disciplinary functions of the Bar and the courts. However, it is clear that the court's inherent power is not limited or bound by the technical precepts contained in the Code of Professional Responsibility as administered by the Bar.

*Thibaut*, 39 N.C. App. at 109, 250 S.E.2d at 300. As a result, at least with respect to disciplinary or disbarment proceedings, the State Bar and the trial courts of this state share concurrent jurisdiction. *North Carolina State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989).

> It is true that . . . questions relating to the propriety and ethics of an attorney are ordinarily for the consideration of the North Carolina State Bar. . . . [N.C. Gen. Stat. §] 84-36 specifically provides, however, that the provisions of [Chapter 84 of the

North Carolina General Statutes] are not to be construed as disabling or abridging the inherent powers of a court to deal with its attorneys.

*In re Northwestern Bonding Co., Inc.*, 16 N.C. App. 272, 275, 192 S.E.2d 33, 35, *cert. denied and appeal dismissed*, 282 N.C. 426, 192 S.E.2d 837 (1972) (citations omitted). Thus, under the system of concurrent jurisdiction over attorney conduct and discipline in effect in North Carolina, both the State Bar and the courts have an important role to play in assuring that attorneys conduct themselves properly, with the courts focusing on "protect[ing] [them]sel[ves] from fraud and impropriety and [] serv[ing] the ends of the administration of justice[,]" *Thibaut*, 39 N.C. App. at 109, 250 S.E.2d at 300, while the State Bar has responsibility for the broad range of "questions relating to the propriety and ethics of an attorney[,]" *In re Northwestern Bonding Co., Inc.*, 16 N.C. App. at 275, 192 S.E.2d at 35, and with neither to act in such a manner as to "disabl[e] or abridg[e]" the powers of the other. *Id.*

The trial court's decision to prevent Plaintiff from maintaining a civil action against Defendant for the ostensible purpose of collecting a fee for his representation of Defendant in the equitable distribution litigation despite the fact that the State Bar's fee dispute resolution process had not come to a natural conclusion does not impermissibly "disable or abridge" the courts' inherent authority over attorney conduct. This case does not involve issues of attorney discipline or the protection of the courts from fraud or impropriety which lie at the core of the courts' inherent authority over attorneys. In fact, prior to the point in time at which Plaintiff filed suit, nothing about the manner in which the fee dispute between Plaintiff and Defendant had been handled provided any basis for believing that Plaintiff should be subject to professional discipline. On the contrary, Comment [12] of Rule 1.5(f) of the Rules of Professional Conduct states that, as long as the attorney has participated in the required fee dispute resolution process, "a tribunal's reduction or denial of a petition or claim for a fee is not evidence that the fee request violates this Rule[.]" In fact, the more pertinent question in this instance is not whether the State Bar's assertion of jurisdiction over fee disputes between attorneys and their clients "disabl[es] or abridg[es] the inherent powers of a court[,]" but rather, whether the exercise of the court's jurisdiction would "disabl[e] or abridg[e]" the functions of the State Bar. *In re Northwestern Bonding Co.*, 16 N.C. App. at 275, 192 S.E.2d at 35; *see also McMichael v. Proctor*, 243 N.C. 479, 485, 91 S.E.2d 231, 235

(1956) (stating that, "[w]hile the court has the inherent power to act whenever it is made to appear that the conduct of counsel in a cause pending in court is improper or unethical, under our present statute[,] questions of propriety and ethics are ordinarily for the consideration of the [State Bar], which is now vested with jurisdiction over such matters"). Thus, at a minimum, we do not believe that requiring Plaintiff to comply with the State Bar's fee dispute resolution process as a precondition to initiating civil litigation against Defendant in any way interferes with the inherent disciplinary jurisdiction of the courts over attorney conduct.

"[A] system of administrative procedure has been instituted in which matters of regulation and control may, and *must* be, tried by properly established commissions and agencies that are peculiarly qualified for the purpose." *Elmore v. Lanier*, 270 N.C. 674, 677, 155 S.E.2d 114, 116 (1967) (emphasis added). "Thus, we have the [Industrial] Commission, the Utilities Commission, and the Insurance Commission which are similarly empowered to hear and determine controversies in their respective fields." *Id.* "After the hearings before the agencies have been conducted, the statute[s] [provide] any aggrieved party his 'day in court' by appeal or other recognized procedure." *Id.* "To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies." *Id.* Although the procedures adopted by the State Bar for the resolution of fee disputes between attorneys and their clients differ from the administrative procedures traditionally employed by agencies such as the Utilities Commission and the Industrial Commission, the basic principle that one must comply with a valid administrative regime before seeking redress in the courts is equally applicable in this instance. *State ex rel. Utilities Commission v. Carolina Water Service, Inc., of North Carolina*, 335 N.C. 493, 499, 439 S.E.2d 127, 130 (1994) (stating that "we have held that '[o]nly those who have exhausted their administrative remedy can seek the benefit of the statute [authorizing judicial review]' ") (quoting *Sinodis v. Board of Alcoholic Control*, 258 N.C. 282, 287, 128 S.E.2d 587, 590 (1962).

[2] In this case, the State Bar has, by means of a set of rules and regulations the validity of which have not been challenged in this proceeding, required attorneys engaged in fee disputes with clients to participate in a State Bar-operated dispute resolution process in good faith before seeking resort to the Courts. According to the undisputed

CUNNINGHAM v. SELMAN

[201 N.C. App. 270 (2009)]

evidence in the record, which is reflected in the trial court's findings of fact, Plaintiff prematurely and unilaterally ended his participation in the State Bar's fee dispute resolution program and brought suit against Plaintiff for the purpose of reducing his claim to judgment.[4] To allow Plaintiff to violate valid State Bar rules to his own advantage by permitting his lawsuit to proceed despite his noncompliance with those rules and regulations would completely undercut "the efficiency, effectiveness, and purpose" of the State Bar's rules and "disable and abridge" its authority over attorney conduct in contravention of the dual system of jurisdiction over attorney conduct that exists in North Carolina. The law should not, and does not, countenance this result.

[3] As a related matter, Plaintiff also contends that, even if he did violate the State Bar's fee dispute resolution rules at the time that he filed his complaint, the State Bar "waived" those rules and allowed his civil action to go forward by terminating the fee dispute resolution process and notifying the Grievance Committee of his conduct upon receiving word of the filing of his complaint. Once again, we do not find this argument persuasive. In the event that an attorney could circumvent otherwise existing jurisdictional limitation on his or her ability to maintain an civil action intended to reduce a claim against a client for attorneys' fees to judgment arising from the fee dispute resolution process by simply filing suit in violation of applicable State Bar rules, the effect would be to render the State Bar's rules and any resulting jurisdictional limitations on the power of the courts to hear and decide such disputes completely meaningless. Although we express no opinion as to whether Plaintiff could have successfully advanced this "waiver" argument had he voluntarily dismissed his initial civil action and filed another one after giving the State Bar and Defendant a reasonable opportunity to restart the fee dispute resolution process, we conclude that no such "waiver" argument has any validity on the present set of facts. Thus, Plaintiff's "waiver" argument is without merit.

---

4. Although Plaintiff contends that the State Bar fee dispute resolution process had ended in an impasse by the time that he filed suit against Defendant, the correspondence which Ms. Bathurst sent to both Plaintiff and Defendant tells an entirely different story. As of the date upon which Plaintiff filed his complaint against Defendant, he had received no indication from Ms. Bathurst or anyone else associated with the fee dispute resolution program that the State Bar had terminated its efforts to bring about an amicable resolution to the dispute between the parties. In the absence of such evidence, we do not believe that Plaintiff can credibly claim that he was entitled to resort to litigation because the State Bar's dispute resolution process had ended unsuccessfully.

**[4]** In addition, Plaintiff contends that Defendant impermissibly used Rule 1.5(f) of the Rules of Professional Conduct as a "procedural weapon" to defeat his claim for attorneys' fees in this case. In support of this argument, Plaintiff cites *Baars v. Campbell University*, 148 N.C. App. 408, 558 S.E.2d 871, *disc. review denied*, 355 N.C. 490, 563 S.E.2d 563 (2002), and Comment [7] of Rule 0.2 of the Rules of Professional Conduct for the proposition that Defendant lacked "standing" to raise the issue of "Plaintiff's alleged noncompliance with the North Carolina Rules of Professional Conduct." According to Comment [7] of Rule 0.2:

> Violation of a Rule should not give rise itself to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a Rule.

Rules of Professional Conduct, Rule 0.2, Comment [7]; *see also Baars*, 148 N.C. App. at 421, 558 S.E.2d at 879 (stating that "[t]his Court has held that 'a breach of a provision of the Code of Professional Responsibility is not in and of itself . . . a basis for civil liability' ") (quoting *Webster v. Powell*, 98 N.C. App. 432, 439, 391 S.E.2d 204, 208 (1990), *aff'd* 328 N.C. 88, 399, S.E.2d 113 (1991)). Plaintiff's reliance on *Baars* and Comment [7] is misplaced. The fact that the Rules are "not designed to be a basis for civil liability[;]" that the "purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons[;]" and that "nothing in the Rules should be deemed to augment any substantive legal duty of lawyers" does not mean that the Rules of Professional Conduct have utterly no bearing on the proper resolution of civil litigation. Instead, we believe Comment [7] and the principle enunciated in *Baars* are

directed primarily toward cases in which a former client claims that an attorney is civilly liable, based, in whole or in part, on alleged violations of the Rules of Professional Conduct. The present case does not involve such a scenario. Furthermore, neither Comment [7] nor *Baars* categorically precludes the use of standards set out in the Rules of Professional Conduct in civil litigation; instead, they simply point out that the Rules of Professional Conduct do not have the primary purpose of establishing a standard of care for use in determining civil liability. In this case, however, the principle upon which Plaintiff relies is totally inapplicable because Defendant does not seek to hold Plaintiff liable for an alleged violation of Rule 1.5(f); instead, Defendant found herself on the receiving end of civil litigation after having invoked the State Bar's fee dispute resolution process and attempted to use Plaintiff's noncompliance with the State Bar's rules as a jurisdictional defense to Plaintiff's claim. At bottom, the principal question here is not whether Defendant had "standing" to inform the Court about Plaintiff's violation of Rule 1.5(f); instead, the principal issue before the trial court was whether it had subject matter jurisdiction over the issues raised by Plaintiff's complaint given Plaintiff's noncompliance with the State Bar's fee dispute resolution process, a fact about which Defendant was fully entitled to inform the trial court. As a result, Plaintiff's reliance on *Baars* and Comment [7] is misplaced.

**[5]** Finally, Plaintiff argues that the State Bar, and not the courts, should impose any sanction to which he is subjected as a result of any violation of the State Bar's fee dispute resolution rules that he might have committed. In advancing this argument, Plaintiff fundamentally misapprehends the nature and purpose of the trial court's ruling. The trial court did not dismiss Plaintiff's complaint as a sanction against Plaintiff; instead, the trial court dismissed Plaintiff's complaint because his failure to comply with the State Bar's fee dispute resolution rules deprived the trial court of jurisdiction over the subject matter of Plaintiff's claim against Defendant. Thus, even if the State Bar ultimately decides to sanction Plaintiff for initiating civil litigation against Defendant in order to reduce his fee claim to judgment prior to the termination of the fee dispute resolution process, he will not have been sanctioned twice for the same conduct. Thus, Plaintiff's "sanctions" argument lacks merit as well.

As a result, for the foregoing reasons, we conclude that the trial court's findings of fact are supported by competent evidence of record and that the trial court did not err by dismissing Plaintiff's

claim without prejudice for lack of subject matter jurisdiction. At the time Plaintiff filed suit, jurisdiction over the fee dispute between Plaintiff and Defendant was vested with the State Bar, a fact which deprived the trial court of jurisdiction to hear Plaintiff's claims until the fee dispute resolution process had come to its natural conclusion. Since that event had not occurred by the time that Plaintiff filed suit against Defendant, the trial court lacked subject matter jurisdiction over Plaintiff's complaint. As a result, the trial court's order is affirmed.

AFFIRMED.

Judges GEER and STROUD concur.