BONNIE DAVIS McGEE v. LARRY L. EUBANKS AND DEBORAH A. EUBANKS
v. CURTIS KEITH McGEE

No. 8521SC50

(Filed 15 October 1985)

1. **Attorneys at Law § 5.1— failure to remit funds to client**

The evidence supported the trial court's findings that defendant attorney followed plaintiff client's instructions in disbursing funds received from a fire insurance settlement to plaintiff's son with the exception that defendant was to protect $9,000 of the proceeds for plaintiff and pay such amount to her when the insurance draft was cashed but that plaintiff only received $2,700. These findings supported the court's judgment in favor of plaintiff against defendant attorney for $6,300 and its judgment for defendant in a third party action against plaintiff's son for $6,300 plus $2,000 punitive damages.

2. **Attorneys at Law § 5.1— breach of disciplinary rule—no basis for civil liability**

Even if defendant attorney breached DR9-102(A) of the Code of Professional Responsibility by failing to deposit client funds in one or more identifiable bank accounts separate from the attorney's business and professional accounts, that breach in and of itself would not be a basis for civil liability.

3. **Public Officers § 9— conspiracy to defraud by notary—insufficient evidence**

Absent allegations of malice or corruption, a notary may not be held liable for acts within her scope of duties. In this case, the evidence was insufficient to support a conclusion that defendant notary conspired to defraud plaintiff when defendant notarized a signature placed on a release form by plaintiff's son after plaintiff authorized her son to sign the release for her and authorized defendant to notarize such signature.

APPEAL by plaintiff from *Saunders, Judge*. Judgment entered 28 September 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 28 August 1985.

Plaintiff, Bonnie Davis McGee (hereinafter Ms. McGee), instituted this action 27 May 1983 by filing her complaint alleging that defendants, attorney Larry L. Eubanks and his wife, Deborah A. Eubanks, conspired to defraud her of $39,550 in proceeds from the settlement of a fire insurance claim. Defendants denied any conspiracy to defraud plaintiff. By way of a third party complaint, defendants named Curtis Keith McGee as a third party defendant on the grounds that he acted as agent for plaintiff and wrongfully converted proceeds from the settlement of the fire insurance claim.

On 27 June 1982, certain real property owned by Ms. McGee was destroyed by fire. Defendant Larry Eubanks was retained to represent plaintiff to procure a settlement of the fire insurance claim. Prior to the settlement of the fire insurance claim, plaintiff orally agreed with third party defendant, Curtis Keith McGee, her son, to purchase a house owned by Curtis McGee for $20,000 to be paid from the proceeds of the insurance settlement.

On 4 November 1982, the insurance claim release arrived in the office of Larry Eubanks. Deborah A. Eubanks, a notary public, was employed by her husband as a legal secretary. When the release form arrived in the office, Deborah A. Eubanks instructed Curtis Keith McGee to procure his mother's signature on the release. Approximately ten minutes later Curtis Keith McGee returned with a signature on the release form. Deborah A. Eubanks called Ms. McGee informing her that Curtis had not done as she requested and that Ms. McGee was to personally sign the release. Instead of signing the release, Ms. McGee authorized her son to sign the release for her and authorized Deborah A. Eubanks to notarize the signature. After the release was signed and the signature notarized per Ms. McGee's authorization, Curtis Keith McGee delivered the release to the insurance company.

On 5 November 1982, a fire loss payment draft for $39,550 arrived at Larry Eubanks' office made payable to Ms. McGee and her attorney, Larry Eubanks. Since the draft could not be cashed for ten days, Curtis McGee presented a third party, Garvie Welborn, who purportedly would cash the check immediately. How-

ever, Mr. Welborn had only $12,000 in cash, $27,550 less than the face amount of the draft.

Larry Eubanks telephoned Ms. McGee and informed her of the arrangement Curtis was proposing. Larry Eubanks informed Ms. McGee that Mr. Welborn did not have sufficient funds to cash the draft for its face amount. Nevertheless, she authorized her son to place her signature on the check. The only person to receive cash from Garvie Welborn on 5 November 1982 was Curtis McGee, who received the entire $12,000. Later, when the draft cleared the bank, Mr. Welborn paid to Larry Eubanks attorney fees of $3,000, and paid the balance to Curtis McGee. When Ms. McGee did not receive any money after the draft was cashed, she made demand on attorney Eubanks, asserting that she had previously revoked her agreement with Curtis to purchase the house. Larry Eubanks informed her that the money was gone, but she would receive the $9,000 he had expressly agreed to protect for her. Thereafter, at the instruction of Larry Eubanks, $2,700 was paid by Curtis McGee to his mother, leaving a balance of $6,300 due her pursuant to Larry Eubanks' promise to see that she received $9,000.

The trial court awarded Ms. McGee a judgment against Larry Eubanks in the principal sum of $6,300, plus interest of 8 percent from 9 November 1982. Ms. McGee's action against Deborah Eubanks was dismissed. On the third party complaint the court awarded compensatory damages of $6,300, plus interest of 8 percent from 9 November 1982, along with punitive damages in the sum of $2,000. From the judgment of the trial court, plaintiff appeals.

*Randolph and Tamer, by Clyde C. Randolph, Jr., for plaintiff appellant.*

*Wilson, Degraw, Johnson & Miller, by Dan S. Johnson, for defendants appellees.*

JOHNSON, Judge.

[1] The questions presented by appellant primarily focus on whether the trial court's findings of fact were supported by the evidence presented. Ms. McGee's additional assignments of error raise the question of whether attorney Eubanks may be held

strictly liable for a breach of DR9-102 of the Code of Professional Responsibility.

The pertinent findings of fact to which Ms. McGee takes exception are as follows:

17. On November 5, 1982, the plaintiff and the defendant Larry Eubanks, expected that the following events would take place upon authorization, and the plaintiff's authorization was granted on these conditions.

(a) That Eubanks would 'protect the $9,000.00' and pay it to the plaintiff when the draft was cashed by Welborn;

(b) That Eubanks would receive his $3,000.00 when the draft was cashed;

(c) [T]he sum of $7,500 would represent a loan to defendant McGee from the plaintiff McGee;

(d) That $7,500 sum would be used to repay Phillip McGee for his interest in the Belews Creek Road homeplace of the plaintiff arising out of the June transaction with his brother;

(e) That the third party defendant [Curtis Keith McGee] would receive from Garvie Welborn, when the draft was cashed, the sum of $20,000.00 representing the purchase price, down payment on McGee's house arising out of his agreement with his mother for the sale of his house.

In the review of an appeal from a trial court judgment without a jury, we are bound by several salient principles. The cardinal principle is that ". . . the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E. 2d 368, 371 (1975). Ms. McGee asserts that there is insufficient evidence to support the trial court's findings of fact. "The findings of the court will not be reviewed if there is *any* competent evidence in the record to support them." *Wachovia Bank & Trust Co. v. Bounous*, 53 N.C. App. 700, 706, 281 S.E. 2d 712, 715 (1981) (emphasis added).

In the case *sub judice* the evidence supporting finding of fact 17 tended to show that Ms. McGee authorized attorney Larry

McGee v. Eubanks

Eubanks to distribute the insurance funds. In most instances where Ms. McGee has assigned error to the court's findings of fact it was her own testimony which supported the court's findings. Ms. McGee testified that ". . . at that time, he [Larry L. Eubanks] was to have his $3,000.00, send me a check for nine, and give Keith the twenty for the house plus seven thousand—it was a little over seven thousand he was to give Keith—and Keith was to owe me." There are several other excerpts from Ms. McGee's testimony which support the court's finding that Larry Eubanks was to protect $9,000 for her. Larry Eubanks also testified that Ms. McGee instructed him to keep her $9,000, whereupon he agreed to "protect the $9,000" on her behalf. We conclude there is ample evidence in the record to support the court's finding that at Ms. McGee's request attorney Eubanks was to "protect" $9,000 for her.

The evidence in the record supports the court's findings that it was Curtis Keith McGee who received $12,000 the day the draft was cashed. Garvie Welborn's testimony along with testimony by Larry Eubanks conclusively established this fact.

The court found that Ms. McGee authorized the draft to be cashed with the knowledge that Garvie Welborn had insufficient funds to tender the full amount of the draft; therefore, Curtis Keith McGee would receive the cash that Mr. Welborn tendered. These findings are borne out by Larry Eubanks' testimony with respect to a telephone conversation between him and Ms. McGee about the state of Ms. McGee's affairs.

Ms. McGee also excepted to the court's finding of fact that the sum of $7,500 would represent a loan to Curtis Keith McGee. As pointed out earlier, Ms. McGee testified that "Keith was to owe me," which supports the trial court's finding.

Testimony with respect to Ms. McGee's purported revocation of authority for the draft to be cashed by Welborn tends to show that the insurance draft had already cleared. Again, Ms. McGee testified that she spoke with Larry Eubanks concerning the transaction "*either* before the draft cleared *or* the day." (Emphasis added.) However, Larry Eubanks' testimony specifically places the conversation with Ms. McGee in the evening after the draft was cashed. Thus, the trial court could reasonably find as a fact

that the authorization was still in effect at the time the draft was cashed.

[2] Plaintiff's next assignment of error is that the trial court erred by not concluding as a matter of law that Larry Eubanks violated DR9-102 of the Code of Professional Responsibility of the North Carolina State Bar. The relevant portion of DR9-102(A) provides "[a]ll funds of clients . . . other than advances for costs and expenses shall be deposited in one or more identifiable bank accounts" separate from the attorney's business and personal accounts. DR9-102(A), Code of Professional Responsibility. However, the preliminary statement to the Code states "[t]he code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, *nor does it undertake to define standards for civil liability of lawyers for professional conduct.*" Code of Professional Responsibility, Preliminary Statement (emphasis added). Thus, assuming *arguendo* that Larry Eubanks had breached DR9-102 of the Code of Professional Responsibility of the North Carolina State Bar, that breach in and of itself would not be a basis for civil liability. ". . . [D]isciplinary rules are derived from ethical rather than legal principles. . . . [a]nd most rules of law are derived ultimately from ethical principles. But before an ethical principle can serve as a satisfactory source for legal rules, it must be accepted as a *legal* principle." Patterson, *A Preliminary Rationalization of The Law of Legal Ethics*, 57 N.C. L. Rev. 519, 525 (1979). Accordingly, we conclude that the trial court did not err in refusing to find as a matter of law that Larry Eubanks could be held liable for a violation of the disciplinary rules.

[3] Ms. McGee's next contention is that the trial court erred by dismissing her claim against defendant Deborah A. Eubanks. The trial court made findings of fact that Deborah Eubanks advised her husband Larry Eubanks that Curtis Keith McGee had not procured Ms. McGee's signature on the release. Upon being informed of this, Ms. McGee authorized Deborah A. Eubanks to notarize the release form. In North Carolina a notary public is a public officer. *Nelson v. Comer*, 21 N.C. App. 636, 205 S.E. 2d 537 (1974). Absent allegations of malice or corruption a notary may not be held liable for acts within her scope of duties. *Id.* Though there were allegations of fraud, there was, as a matter of law, insufficient evidence to support a conclusion that Ms. Eubanks con-

spired to defraud Ms. McGee. We conclude that the evidence supports the trial court's findings and the findings support the judgment against defendant.

Affirmed.

Judges EAGLES and PARKER concur.